## Staunton.

### STOKES AND ALS. v. VAN WYCK AND ALS.

#### SEPTEMBER 23d, 1887.

1. WILLS—*Construction—Rule—True inquiry*.—In interpreting wills, the intention of testator must be sought and followed, and that intention must be looked for in the will itself. Yet the true inquiry is not what testator meant to express, but what the words used by him do express. *Burks* v. *Lee*, 76 Va. 389.

2. IDEM—*Rule in Shelley's case—Limitation over to testator's heirs—Vesting estates*.—Where testator, dying in 1834, limited to his daughter, Mrs. W., an estate for life, with remainder to her issue in fee, and in default of issue, with limitation over to his own heirs—

HELD:

    Under the law then in force (1 Rev. Code 1819, p. 369, ₴ 25), Mrs. W. took an estate-tail that by the statute was converted into a fee-simple, but the fee was determinable by her death without issue *then living*, with a limitation over to the person who was testator's heir at the time of *his* death—the rule of law applying which favors the vesting of estates as soon as possible. *Cooper* v. *Hepburn*, 15 Gratt. 558.

3. IDEM—*Heir—Heirs*.—The word "heir" is *nomen collectivum*, and embraces all legally entitled to partake of the inheritance, and is interchangeable with the plural term "heirs," and *vice versa*.

4. IDEM—*Case at bar*.—B., dying in 1834, by his will limited an estate in fee to his daughter, Mrs. W., for her life, with remainder to her issue in fee, and in default of issue, to his own heirs. At the time of testator's death Mrs. W. was his sole heir. In 1857 she sold and conveyed the estate. In 1884 she died without ever having had issue. In ejectment by S. and others, who were testator's heirs living at Mrs. W.'s death, against her grantees, to recover the estate—

HELD:

    Mrs. W.'s grantees acquired perfect title by her conveyance.

Argued at Richmond.    Decided at Staunton.

Error to judgment of circuit court of city of Norfolk, rendered May 29th, 1885, in an action of ejectment in which Mary Stokes and others were plaintiffs, and H. D. Van Wyck and others were defendants. Verdict and judgment being for the defendants, the plaintiffs obtained a writ of error and *supersedeas* from one of the judges of this court. Opinion states the case.

*Burroughs & Bro.* and *Starke & Martin,* for the appellants.

*Walke & Old* and *Whitehurst & Hughes,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The case presented by the record is this: William Boush died testate in 1834, leaving one child, Elizabeth Jacomine, wife of David M. Walke. His will was dated June 3, 1830, and was probated in February, 1834. Its construction is involved in this case. The sixth clause thereof—the one in question—is as follows:

" 6th Item. I give and bequeath to my daughter, Elizabeth Jacomine Walke, and her husband, David M. Walke, during their joint lives, and to the survivor of them during the life of such survivor, the land and plantation whereon I now live in the county of Princess Anne; and if my said daughter should die leaving issue, at her death I do give and bequeath the said land and plantation, after the termination of the life estates aforesaid, to such issue and to his, her or their heirs forever; but if my said daughter should die without leaving such issue, then my will and desire is, that after the death of my son-in-law, David M. Walke, that the said land and plantation should pass and descend to my heirs, according to the laws of descent in Virginia, and their heirs forever."

At the testator's death, his said daughter, Elizabeth Jacomine Walke, was his sole heir-at-law. Her husband died in 1854. She died in 1884 without having had and without leaving issue.

The testator had only one brother, Caleb Boush, and only one sister, Elizabeth J. Boush. The plaintiffs are the descendants of this brother and sister, and are the heirs-at-law of said William Boush living at the death of his said daughter in 1884. In 1857, Mrs. Walke sold and conveyed the said land and plantation to Francis Mollony. His executor, in 1860, sold and conveyed it to Peter C. Tompkins, who, in 1869, sold and conveyed the same to George P. Gordon. The latter died in 1879, intestate, leaving a daughter, Mary Gordon, as his sole heir, and his widow, Louisa M. Gordon, who afterwards intermarried with H. D. Van Wyck, and is now his wife.

In March, 1885, the plaintiffs, who are the descendants of Caleb Boush and Elizabeth Boush, the brother and sister of the testator, William Boush, brought their action of ejectment against said Van Wyck and wife, to recover said land and plantation in the said sixth clause of the testator's will mentioned. The defendants pleaded "not guilty," and issue was joined thereon.

During the trial the plaintiffs asked for the following instruction, which the court refused to give :

"If the jury believe from the evidence that the tract of land in the declaration described was devised by William Boush to his daughter, Eliz. J. S. Walke ; that she died in the month of ——, 1884, without issue; that her husband, David M. Walke, pre-deceased her; that the said tract of land was sold by David M. Walke and Eliz. J. S., his wife, to Francis Mollony; by M. F. Mollony, the executor of Francis Mollony, to Peter C. Tompkins; by Louisa A. Tompkins, executrix of Peter C. Tompkins, to George P. Gordon; that the defendants are the widow and heirs-at-

law of said Gordon, and that the plaintiffs are the heirs-at-law of the said William Boush living at the death of his daughter, Eliz. J. S. Walke, then they should find for the plaintiffs."

On the other hand, on the motion of the defendants, the court gave to the jury the following instructions, which first recited the said sixth clause of the testator's will as given above; and, secondly, recited the ninth clause of said will, which is as follows: "Item 9. I give and be·queath to my said daughter, Elizabeth Jacomine Walke, all the rest and residue of my lands and real estate during her natural life, and if she should leave issue at her death, then to such issue and their heirs forever. But if she should die without such issue, then the said lands to pass and descend to my heirs, according to the laws of descent in Virginia, and to their heirs forever"; and proceeds thus: "The court instructs the jury that the ultimate devise, under the foregoing clauses of the will of William Boush, to the heirs of William Boush, according to the laws of descent in Virginia, and their heirs forever, refers to such person or persons as were the heirs of William Boush at the time of his death, and not to such persons as were the heirs of William Boush at the death of his daughter, Elizabeth J. Walke, and if the jury believe from the evidence that Elizabeth J. Walke was the only child and heir of William Boush at the time of his death, then they must find for the defendants."

To the refusal of the court to give the instruction asked for by them, and to the giving of the instruction asked for by the defendants, the plaintiffs excepted. The jury found for the defendants, and the plaintiffs moved the court to set aside the verdict and grant a new trial, on the ground of misdirection and that the verdict was contrary to the evidence; but the court overruled the motion and gave judgment according to the finding of the jury, and the

plaintiffs again excepted. To this judgment a writ of error was awarded the plaintiffs.

The sole question for determination is, did the limitation over to " the heirs of William Boush, according to the laws of descent in Virginia, and their heirs forever," refer to those who were his heirs at the time of his death, or to those who might be his heirs at the time of his daughter's death?

The circuit court, by its instruction given at the instance of the defendants below, the defendants in error here, ruled that the limitation referred to those who were William Boush's heirs at the time of his death; and that ruling is assigned as error for which the judgment complained of should be reversed. And, for the plaintiffs in error, counsel ably and learnedly contend that, under the true construction of the said sixth clause of the testator's will, the limitation over refers to those who should be the heirs of William Boush at the death of his daughter, the said Elizabeth Jacomine Walke.

The effect of the rulings of the circuit court in refusing the instruction asked for by the plaintiffs, and in giving the instruction asked for by the defendants, was necessarily that the defendants were the true owners of the land in controversy, they being the alienees of Mrs. Walke, who was the sole heir-at-law of William Boush at the time of his death. Whilst, for the converse reason, the plaintiffs in error insist that they, and not the alienees of Mrs. Walker, are the true owners of said tract of land. To determine whether the one or the other of these contentions is the true one depends upon the proper interpretation of the testator's will; or, to state it differently, whether the trial court erred in refusing the instruction asked for by the plaintiffs, and in giving that asked for by the defendants.

The question, then, is resolved into another—substan-

tially the same, though presented in a different form—namely: What estate did Mrs. Walke take under said sixth clause? The answer to this question necessarily depends upon the testatorial intention to be gathered from the will itself, and nothing else, if that instrument is intelligible, and not obnoxious to any recognized principle of law.

In construing wills, it is universally admitted that the intention of the testator must be sought after as the "pole-star," and, when found, must be followed as the "sovereign guide," and that the intention must be looked for and found in the will itself. But it must be borne in mind, however, that the true inquiry is not what the testator meant to express, but what the words used by him do express. *Burks* v. *Lee*, 76 Va. 389. And it must also be remembered that though the testator's intention, when ascertained, is implicitly obeyed, however informal the language in which it is conveyed, yet the courts, in construing that language, always resort to certain established rules—rules deeply imbedded in the law—by which particular words and expressions, standing unexplained, have acquired a definite legal signification which does not always comport with their popular acceptation. 3 Jarman on Wills, 669–70, top. And Lord Coke says: "In such cases I have learned this good rule, always to judge as near as may be according to the rules of law."

The sixth clause of the will limits to Mrs. Walke an estate for life, with remainder to her issue in fee, and in default of issue, to the testator's heirs. The legal effect of these limitations must, of course, be viewed in the light of the law as it stood at the time of the testator's death—that is, in February, 1834. At that time the famous rule in *Shelley's case* prevailed, and then, as now, the statute (1 Rev. Code 1819, p. 369, § 25) was in force, which converts estates-tail into fees-simple; and that rule is "that where the ancestor takes an estate of freehold, with a remainder

in the same instrument, either mediate or immediate, to his heirs or the heirs of his body, the word *'heirs'* is a word of limitation of the estate, and not of purchase." Under that rule, it is obvious that Mrs. Walke took an *estate-tail,* and that, by force of the statute above referred to, the *estate-tail* was converted and enlarged into a fee-simple estate. But that fee-simple estate was determinable by her death without issue *then living,* with a limitation over, *in that case,* to the *heirs* of the testator, William Boush.

The question again recurs, What *heirs* of William Boush? The *heirs* living at his death, in 1834, or the heirs living at Mrs. Walke's death, in 1884? She was the only child and heir living at the date of the testator's will, and at his death. She was to him the nearest and dearest, and was unquestionably the chief object of his affection and bounty. The testator, therefore, limited the estate, first, to her and her husband for life, and to the survivor for life; and, secondly, to her issue. But if she had no issue, then it would seem that he naturally would, lastly, prefer her—his only child and right heir—to others not so near in blood and affection, and give the estate to her absolutely, without limitation or restriction, to do with as she pleased. Such would be the natural conclusion, in the absence of anything in the will to the contrary, if we were driven to the ties of blood as they are known in the common experience of men, and were not confined to the will itself, to be read and interpreted in the light of well-settled legal principles. There is nothing in the language used by the testator inconsistent with this natural inclination of a father to send his property along with his affection for his daughter and only child. Not even once in his will did the testator allude to his brother and sister, or to their descendants. Why, then, should he be supposed to have intended the property ultimately for them, in the event

his daughter should die without issue, when he failed to say so, and when they are not referred to in the will? There is no expression employed in the will that indicates in the least degree any purpose to designate as *the class of persons* who should take the estate at the death of the testator's daughter, without issue, those who *would be* his heirs-at-law at his death. He says: "But if my said daughter should die without leaving such issue, *then* my will and desire is that after the death of my son-in law, David M. Walke, that the land and plantation should pass and descend *to my heirs* according to the laws of descent in Virginia." Here there are no words pointing to his his heirs *at a future period.* The word *"then"* is not here used as an adverb of time. It evidently means "in that event"—that is, in the event his daughter died without issue. 3 Jarman, 683.

There is nothing favorable to the plaintiffs in error in the testator's use of the plural word *"heirs,"* nor can its use exclude the idea that the testatorial intent was to limit the estate to the daughter, who was the *sole "heir."*

The word "heir" is *nomen collectivum,* embraces all legally entitled to partake of the inheritance, and is interchangeable with the plural term "heirs." The term "heirs" means "next of kin," according to our statute of descents. Where there is a gift to the heir (in the singular), and there is a plurality of persons conjointly answering to the description "heir," all were held to be entitled. 2 Lord Raymond, 829. The converse is also true. Where testator, after making several contingent dispositions of personal property, gave the ultimate interest to his own right *heirs* (in the plural), it was held that the testator's *heir* was entitled, and not his executor. *Pleydell* v. *Pleydell,* 1 P. Wms. 748.

The will here under consideration was executed in 1830. It was ambulatory until the testator's death, which occurred

in 1834. He might well have thought it within the range, at least, of possibility, that by the time the will was consummated by his death, his next of kin, according to the laws of descent, might be plural instead of singular, and he might appropriately use the word "heirs" to meet that contingency. But however this may have been, there is, as we have seen, nothing in the word "heirs" which is interchangeable with the singular term "heir" which in the least tends to uphold the claim of the plaintiffs in error. Indeed, it would be a bold stretch of judicial authority to exclude the sole right heir upon any such flimsy pretext.

But if the language of the limitation—"to my heirs"— could be considered, as used, ambiguous, and it were a matter of doubt whether these words refer to the testator's death or to the death of Mrs. Walke, then the difficulty would at once be overcome by reverting to the rule of law which favors the vesting of estates at the earliest period possible. That rule, applied to the clause of the testator's will under consideration, undoubtedly gives Mrs. Walke a fee-simple estate determinable upon her death with issue living.

In *Cooper* v. *Hepburn,* 15 Gratt. 558, Daniel, J., delivering the opinion of this court, said: "The law leans in favor of the vesting of estates; and if, therefore, the meaning of the testator was doubtful, we should, instead of seeking for a construction that would postpone the vesting of the estate, and impart to the remainder an additional feature of contingency, incline rather to that construction which would regard the remainder as vesting on the happening of the earliest contingency." See also 2 Jarman 406, and cases cited. And on page 616 of same volume, that author says: "An immediate devise to the testator's own heir vests, of course, at his death, and the interposition of a previous limited estate to a third person does not alter the case. Thus, in *Doe d. Pilherton* v. *Spratt,* where a testator

devised to his son A., and M., his wife, and B. and N., his wife, or the survivor of them, for their lives, with remainder to the male heir of the testator, the remainder was held to vest at testator's death in C., who was his male heir at that time."

In *Doe d. Chalmondely* v. *Maxey*, 12 East. 589, devise to certain persons for life (one of whom was testator's heir at law *at his death*), with remainders successively to their heirs in tail male, with the ultimate remainder to the testator's right heirs, held : That this ultimate remainder (or rather reversion) vested in *the heir of the testator at his death*, and not in the persons who would have been his heirs at the termination of the intervening limitations. See also *Wrightson* v. *Macauly*, 14 M. & W. 214, 231; *Boydell* v. *Golightly*, 14 Sim. (37 Eng. Chy.) 327, 345, 347, where there was a devise to trustees in trust for the support of testator's son John for his life, and then for his son John's first and the heirs of his body, and then successively to several other persons for life, with remainder in turn to the sons of each, successively in tail, with remainder to testator's own right heirs forever. Held : John having died without issue, and the intervening limitations having all failed, that the ultimate trust vested *on the testator's* death in his son John, as his heir-at-law at his death. To the same effect are numerous other authorities, which need not be cited here. Redfield, in his work on Wills, after stating the rule as settled by these authorities, says : " So, the law in England is now regarded as fully settled." 2 Red. (2d ed.) 92 M. 104. And though there may be no decision in Virginia on the precise question raised in this case, yet the principle has frequently been recognized and applied in analogous cases by this court. See *Hansford* v. *Elliott*, 9 Leigh, 79 ; *Catlett* v. *Marshall*, 10 Leigh, 79 ; *Martin* v. *Kirby*, 11 Gratt. 67; *Brent* v. *Washington*, 18 Gratt. 526 ; and *Corbin* v. *Mills*, 19 Gratt. 472. In the last

case this court said: "It is a familiar principle that the law favors the vesting of estates; and where a legacy is given which is not to be enjoyed in possession until some future period or event, it will, where no special intent to the contrary is manifested in the will, be held to be vested in interest on the death of the testator, rather than contingent upon the state of things that may happen to exist at the period of payment or distribution." See also *Doe* v. *Considine*, 6 Wall. U. S. R. 458.

Against the overwhelming weight of authorities, thus settling the rule in England, the learned counsel for the plaintiffs in error oppose seven or eight English decisions. Of these, it is sufficient to say that in most of them the limitations contain words denotive of an intention that the estate should vest at a period subsequent to the death of the testator. Some of them have been disapproved by the courts in later cases. Two of them—*Boother* v. *Vicars*, 1 Collyer 6, and *Godkin* v. *Murphy*, 2 Y. & Coll. 351—were referred to in the later case of *Bird* v. *Tucker*, 8 Hare, 301, by the vice-chancellor who decided them as unimportant and of doubtful correctness. Of two others, Jarman (vol. 2d, p. 679) says: "At the present day such decisions as *Briden* v. *Howlett*, 2 M. & K. 90, and *Butler* v. *Bushnell*, 3 M. & K. 232, would probably not be made." Whilst of *Jones* v. *Colbeck*, 8 Ves. 38, it was remarked by Stuart, V. C., in 1 Sm. & Gif. 122, "that case has the singular property of being often cited as authority, always considered as open to objection, and never followed."

It may be added, that if it be true, as is often intimated, that the limitation of the ultimate interest to the heirs of the testator is, in the event of the failure of the prior limitation, tantamount to his dying intestate as to that interest (or reversion), then that interest (or reversion) would have passed and descended unto Mrs. Walke as his only heir, and have vested, in interest, in her immediately

upon his death. But be that as it may, in view of the language of the sixth clause of the will, construed in the light of the rules of law which prevailed in Virginia at the death of the testator, William Boush, in February, 1834, we have no difficulty in arriving at the conclusion that by the limitation in the will Mrs. Walke took a fee-simple estate in the said land, which was determinable by her leaving issue at her death, and which became absolute upon her death without issue. Hence, we can discover no error in the rulings of the circuit court in refusing to give the instruction asked for by the plaintiffs, or in giving that asked for by the defendants, or in overruling the motion of the plaintiffs to set aside the verdict as contrary to the law and the evidence, and award a new trial.

For these reasons, the judgment complained of must be affirmed, with costs to the defendants in error.

JUDGMENT AFFIRMED.