# Staunton.

## GISH AND WIFE v. MOOMAW AND OTHERS.

### September 22d, 1892.

1. WILLS—*Construction—Case at bar.*—Testator by his will provided that, after paying his debts, all his real and personal estate should go to his wife for life, and, on her death, the real estate should be equally divided among his three brothers, " or their heirs, if living "; but if either of the brothers should die " without heirs, before the division of the estate, the property to go to those living, or their heirs."

HELD:

> At the testator's death the brothers each took a vested remainder in fee simple in an undivided third of the real estate, defeasible only by dying without issue before the termination of the life estate, in which event the property was to pass to the survivors.

2. IDEM—*Complete title in fee.*—In the case here the vested remainders in fee in the real estate passed in fee, by purchase and conveyance from the three brothers, to the widow and her second husband, G.

HELD:

> G and wife were, by their joint deed, capable of conveying to their grantee a good and absolute title in fee.

3. SPECIFIC PERFORMANCE—*Case at bar.*—By a sealed instrument G and wife sold a part of said real estate to M and others, and tendered therefor to the purchasers a deed admitted to be " executed in due form and properly acknowledged," but they refused to accept it, on the ground that the title of the grantors was not indefeasible, because, although the life tenant and the three brothers were still living, and all three of them have children, yet one or all of them may die before the life tenant, and thereby defeat the grantors' title.

HELD:

> The deed conveyed a good, absolute title, and the grantors are entitled to have specific execution of the contract of sale.

VOL. LXXXIX—44

Argued at Richmond. Decided at Staunton. Appeal from decree of hustings court of city of Roanoke, rendered May 4th, 1891, in the chancery cause wherein Samuel H. Gish and Nancy E. Gish, (formerly Nancy E. Coon,) are complainants, and W. P. Moomaw, W. J. Blair, L. Blair, Jr., C. A. Moomaw, D. C. Moomaw, Joseph C. Moomaw, Lucy A. Neale, and J. F. Christian and Lucy Coon; Alberta (or Bertie) M. Albert and her husband, Floyd B. Albert; H. S. Coon, J. W. Coon, J. D. Coon; Alice B. Greenwood and her husband, Lacy B. Greenwood; Sarah M. Johns and her husband, Eleaser Johns; D. L. Coon, J. P. Coon, Rufus A. Coon, Ernest C. Coon, William R. Coon; Mary Alice Coon; Mary A. Woodruff and her husband, Paulus Woodruff; Darby H. Coon, Fannie E. Coon, and Daisy M. Coon, are defendants.

The facts are these: William R. Coon departed this life in 1862, testate, leaving a widow, Nancy E., and three brothers, John, Patterson, and Robert, the marriage having been childless; and leaving also a tract of 91 acres of land, then in Roanoke county, but now in Roanoke city, and a small amount of personalty. His will was written by John Trout, a plain farmer; was duly admitted to probate, and is as follows:

" I, William R. Coon, of Roanoke county, in the state of Virginia, do make this, my last will and testament, in manner and form as follows : First—after paying all my just debts, I will and bequeath to my wife, Nancy E., all of my personal and real estate so long as she may live; and after her death I will and bequeath my land to my brothers, John Coon, Patterson Coon, and Robert Coon, to be equally divided between those three brothers, or their heirs, if living; if either of these would die without heirs, before the division of the estate, the property to go to those living, or their heirs.

" I acknowledge this to be my last will and testament in

the presence of these witnesses, this 16th day of June, 1862..

"WILLIAM R. COON."

" Witnesses :

> *John Trout,*
> *Wm. Raines.*"

At the testator's death the widow, who afterwards intermarried with her co-complainant, Samuel H. Gish, and the testator's said three brothers were all living.   She never had a child.   At the date of testator's will each of his brothers had children living, and each of them are now living and have living children.

By deed dated April 1st, 1868, Robert Coon "conveyed, transferred, and assigned" his one-third interest in said real estate to S. F. Simmons ; and in this deed John and Patterson Coon joined.   This deed contains this significant clause : " And whereas, at the termination of the said life estate of said Nancy E., some doubt or difficulty may arise among those entitled to the reversion in said land by right of survivorship, in order to guard against any such doubt or difficulty, and to secure to each of the brothers, John, Patterson, and Robert Coon, a certain and fixed interest in reversion in said land, it is therefore agreed, by and between the said John Coon, Patterson Coon, and Robert Coon, that each one of them will claim and be entitled to one-third part of the said land ; and they do hereby bind themselves, their heirs, &c., jointly and severally, that neither one of them, nor the heirs of either of them, will hereafter at any time claim any other or further portion of said tract under the will of the said William R. Coon than the one-third part thereof."   And by deed dated February 22d, 1882, Sparrel F. Simmons and wife conveyed his said third interest to Gish and wife in fee.

By deed dated February 16th, 1869, John Coon and Patterson Coon conveyed to Pharis Armstrong their entire inte-

rest in said land, each conveying in fee simple one-third part thereof, with general warranty of title. By deed dated March 13th, 1874, the said Armstrong conveyed to John Trout ·(the scrivener and one of the witnesses to the said will) the two-thirds of said land conveyed to him by John and Patterson Coon as aforesaid. And by deed dated February 22d, 1882, the said John Trout granted and conveyed his said two-·thirds of said land to the complainants, Gish and wife.

By indenture executed on the 31st of March, 1890, the complainants, Gish and wife, bargained and sold to the defendants, W. P. Moomaw, D. C. Moomaw, Jos. C. Moomaw, C. A. Moomaw, W. J. Blair, L. Blair, Jr., J. F. Christian, and Lucy A. Neale, 60 acres, more or less, of the said tract, for the sum of $80,000, the residue of the tract having been previously sold by them to others. Gish and wife tendered the purchasers a ·deed of ·conveyance of said 60 acres, but the latter refused to accept the same, on the sole ground that the title of Gish and wife thereto was not perfect, being, as they alleged, " a ·defeasible· fee," or " contingent remainder," or " a conditional ·executory devise."

Thereupon, at the August rules, 1890, the complainants, Gish and wife, filed their bill in the hustings court for the city of Roanoke, against said purchasers, and against the children of John, Patterson, and Robert Coon, some of whom were infants, so as to have before the court all persons directly interested, as well as all those who might be contingently interested in the land devised as aforesaid; and, after setting forth the facts above stated, and after further setting forth that, should the court hold that their interest in said land is less than an indefeasible fee, and that the children of the said three brothers, now living, who, if their respective parents were now dead, would be their heirs, would have interests in said land, that then, in accordance with §§ 2432 and 2436, Code of 1887, and to avoid unnecessary expense and delay,

they make all persons parties who are directly or contingently interested, and they allege that the interests of all such persons would be promoted by the confirmation of the· sale by Gish and wife to the said purchasers, *or by a sale· which may be effected under a decree of court ;* that all the· persons interested directly in the said land are the complainants and the said purchasers, and all that the persons interested contingently in same are the nine children of Patterson Coon, the four children of John Coon, and the six children of Robert Coon, all of whom were mentioned by name in the bill, and duly made parties thereto.

And the complainants, in their bill, say that they are advised, and submit to the court, that the following is the true and lawful construction of said will—to-wit:

1st. Under the will said Nancy E. took an estate for her own life in the testator's personal and real estate.

2d. That John, Patterson, and Robert Coon each took a vested remainder in fee simple in one undivided third part of said real estate.

3d. That in the event that, " before the division of the estate," either John, Patterson, or Robert shall die without leaving issue living at his death, then the fee simple of the one so dying is defeated, and the whole real estate goes to the surviving brothers in fee simple.

4th. But if the three brothers shall all survive " the division of the estate," then the provision as to survivorship does not apply.

And the complainants, Gish and wife, also submit that under the testator's will, by the laws of this state, John, Patterson, and Robert Coon were each entitled to grant and convey away, not only his vested remainder interest in his own undivided third part of said real estate, but also his expectant interest by survivorship in the undivided third parts of his· brothers.

And the complainants further allege that, by an agreement under seal, executed by them as vendors and by said purchasers as vendees, the former bargained and sold to the latter the part of the said tract of 91 acres of land, which is described in said agreement, and is understood to contain 60 acres, more or less, (the balance of said 91-acre tract having been previously sold and conveyed to others by complainants,) in consideration of the price of $80,000 ; and that the said purchasers thereby agreed to pay the complainants the first instalment of said purchase-money—to-wit, $15,000—when the complainants, by a good and sufficient deed, shall convey a valid title in fee simple to said parcel of land sold by said agreement, with the usual and proper covenants of title and assurances of quiet possession to the said purchasers, and $5,000 in six months thereafter, and $20,000 in twenty-four months thereafter, and the remaining $20,000 in thirty-six months thereafter, the said four different instalments to be evidenced by the negotiable notes of the said purchasers, payable, with interest thereon, at the Roanoke Trust, Loan, and Safe Deposit Company, to the complainants' order, which notes to be delivered to the complainants upon the delivery to said purchasers of such deed of conveyance, and to be secured on said parcel of land by a trust deed to be then executed by said purchasers. And the complainants further allege that on the 5th day of June, 1890, they duly executed and acknowledged for record a good and sufficient deed, conveying said parcel of land, as described and bounded as set forth in said agreement, to said purchasers, with covenants as aforesaid, and clothing them with a valid title thereto, free from all incumbrances and, in all respects conformable to the requirements of said agreement; and that day—the day of the date of said deed—they tendered said deed to said purchasers, and demanded of them the payment of the said first instalment, the said notes for the four deferred instalments, and the said trust deed to secure the

same; but that the said purchasers refused to accept the said deed of conveyance, and in all other respects refused to comply with and specifically perform their said agreement of purchase, such refusal being based, not on the ground of any alleged defect of said deed, either in its form or in the manner of its acknowledgment, but solely on the alleged ground that the complainants had not and could not convey a good and valid title *in fee simple* to the said parcel of land embraced in said contract of sale, as therein set forth, and that by the terms of said will it was provided that if any one of the three brothers of the testator shall die during the lifetime of the life tenant, leaving children, then to such of those children as may be living at the death of the life tenant contingent remainders in said land are limited, or, on some other similar theory, assuming that said children take as purchasers under said will. But the complainants in their bill submit that any such construction of said will is wholly untenable and inadmissible, as is also any construction that is inconsistent with the proposition that the complainants are now, by virtue of said will and of said deeds of conveyance, the joint owners of a complete estate in *fee simple* in the said land, and that their deed, tendered as aforesaid, will convey to said purchasers a good and valid title in *fee simple* to the land embraced therein; and they insist that said purchasers should be required by a decree of court to accept said deed, pay said first instalment, deliver them their notes for the four other instalments, and to execute the trust deed to secure the same, in specific performance on their part of said agreement.

And the prayer of the bill is, that the persons named in the caption thereof be made defendants thereto, and be required to answer same—the adults in person and the infants by their guardian *ad litem,* but waiving answers on oath; that said will be construed, and the title of complainants to said land, under said will and under said deeds of conveyance, be

adjudged to be a good and valid fee simple ownership, and that said purchasers be decreed to accept said deed (or other good and sufficient deed) tendered them by the complainants, and to comply with, and in all respects specifically perform on their part, the covenants contained in the said agreement of March 31st, 1890, or that a sale be directed to be made, under §§ 2432, 2436, Code 1887, and for general relief.

The purchasers answered the bill, claiming "that John Coon, Patterson Coon, and Robert Coon, each took a vested remainder in fee in one undivided third of the land, *subject,* however, to be divested in the following manner—to-wit: 1st. By their death ' before the division of the estate,' leaving children; in which case there is no gift to them at all, but the devise is direct to the heirs, issue, or children, who take the land as purchasers and not by descent. 2d. Should either of the brothers. die before the division of the estate, without leaving children, the fee simple of the one dying is defeated, and the whole of the land goes to the surviving brothers, or the children of those who died ' before the division of the estate' leaving children. In other words, the devise of the land to John, Patterson, and Robert is a gift to take effect after the termination of the life estate of Nancy E. Coon (now Nancy E. Gish), and is so worded as to constitute a substitutional fee. And their fee is liable to be defeated by their death ' before the division of the estate,' leaving children, in which case the children become the immediate objects of the testator's bounty. The children are substituted for their parents who died ' before the division of the estate,' and take the land by purchase under the will, and not by descent from their parents."

The defendants—the infant children of John, Patterson, and Robert Coon—also answered by their guardian *ad litem,* in no way varying the defense set up by the said purchasers.

The cause, having been matured, came on and was heard on

the 4th day of May, 1891, when, after bringing the cause on to hearing, a decree was rendered, the substance of which is as follows : " Whereupon, for reasons stated in writing and filed as a part of the record in this cause, the court doth adjudge, order, and decree that the bill of complainants be dismissed, and that they pay to defendants their costs in this behalf expended," &c. From this decree the complainants, Gish and wife, obtained an appeal.

*G. W. & L. C. Hansbrough* and *R. G. H. Kean,* for appellants.

*Penn & Cocke, Moomaw & Woods,* and *Staples & Munford,* for appellees.

RICHARDSON, J., (after stating the case,) delivered the opinion of the court.

This cause, in the view taken by this court, turns upon the construction of the will of the testator, W. R. Coon. The will was written by a plain farmer, and is, in certain respects, as palpably inartificial as any instrument ever was. Omitting the usual formal commencement and the attestation clause, the body of the instrument is as follows :

" First—after paying all my just debts, I will and bequeath to my wife, Nancy E., all my personal and real estate so long as she may live ; and after her death I will and bequeath my land to my brothers, John Coon, Patterson Coon, and Robert Coon, to be equally divided between those three brothers, or their heirs, if living ; if either of these would die without heirs, before the division of the estate, the property to go to those living, or their heirs."

Notwithstanding the inartificial character of the instrument, the testator's general intent, which must overrule the

special intent, if any such there be, is too plain to admit of any reasonable doubt, and that was, as expressed in the will—first, to give the life estate to his wife ; second, to give to his three brothers, whom he mentions by name, if alive at his death, a vested joint remainder in fee, to take effect in possession at the death of the wife ; and, third, that if one of the three brothers should die without heirs (children), " before the division of the estate," then the share of the one so dying to go to the surviving brothers.

Such is clearly the general intent which pervades the entire instrument as a whole, and to the utter exclusion of any possible special intent to the contrary. It is obvious that the testator's mind was not engaged in devising some elaborate scheme by which to keep his estate unaliened in his family as long as the law allowed. On the contrary, his mind was occupied with the thought and purpose of a natural and just disposition of his estate to those most conspicuous in his mind's eye—those nearest to him by the ties of affection, association, and blood ; those with whom he had lived and knew and loved, and those whose claims on his bounty were natural and obvious. So, in the first place, he provided liberally for his childless wife by giving her a life estate in all he had. The next and natural objects of his love and bounty, and whom he intended to own the remainder in fee of all his real estate, were his three brothers ; and this he effected by expressly giving the land to them by name, adding the words " to be equally divided between those three brothers, or their heirs, if living." The obvious and only intelligible meaning of this language is that if, when the will takes effect—*i. e*, at the time of testator's death—one or more of the brothers be dead, leaving heirs (children), the heirs so living at testator's death are to take the interest designated for their ancestor. Thus the testator embodied and provided for the carrying out of his wishes so far as he thought fit to express them,

except in one single contingency—one subordinate and incidental object—which he anticipated and attempted to provide for.    It occurred to him that it was possible that his brothers, or some of them, might pre-decease his wife, and therefore before they came to the enjoyment of the remainder in fee given to them.    If one so died, leaving issue, the issue would take by inheritance an absolute, indefeasible fee in that share. He therefore made no provision for that case, doubtless in view of the fact that the law of descents would effect all his purposes in such event.    But he also foresaw that one of the brothers might die before the life tenant, without issue, and that contingency he deemed it necessary to provide for, and it was the only case he did provide for, and he made that particular provision in the following terms : " If either of these would [should] die without heirs, before the division of the estate, the property to go to those living, or their heirs."

Observe he does not say *that share* is to go to those living, but *the property*—the undivided whole of the estate.    In this connection it may be remarked that the testator's intention is to be ascertained, not from what we may conjecture he meant to say, but from what he actually did say.    " The true enquiry is not what the testator meant to express, but what the words used by him do express."    *Stokes* v. *Van Wyck*, 83 Va. 729, and authorities cited.    See also *Hatcher* v. *Hatcher*, 80 Va. 171, where Hinton, J., said : " The intention must be collected *from the words of the will*, for the object of construction is not to ascertain the presumed or supposed, but the *expressed intention* of the testator—that is, the meaning which the words of the will, correctly interpreted, convey— the expressed meaning being, in wills, as in other written instruments, in legal contemplation, *equivalent to the intention*."    So, in *Rayfield* v. *Gaines*, 17 Gratt. 1, it was said : " Clear and unambiguous provisions are not to be controlled by mere influences and arguments derived from other passages of the instrument, themselves uncertain and ambiguous."

In the event of the death of one of the brothers without heirs, before the division of the estate, the only condition the testator *expressed in his* will is that the survivors, " those living," shall take, not the share of the one so dying, but the PROPERTY—*i. e.*, the land as an undivided whole. What, then, is the effect of the added words, " or their heirs " ? On behalf of the appellees it is insisted that this phrase is to be expanded into a limitation of a substitutional fee to the issue of any other brother who may have previously died leaving issue. No such idea seems to have been entertained by the testator, for he does not so express himself, nor can any such idea be deduced from what he does say.

This contention is aptly and most effectually punctured by Mr. Kean, of counsel for the appellants, who, in his note of argument, says : " The court below and our learned opponents develop these three words, ' or their heirs,' into something equivalent to this—namely : ' Or if, in such case, one or both of the others of my said brothers shall have died in the lifetime of the one so dying without issue, leaving issue surviving, such issue shall take as purchasers the portion of such share which their deceased parent or ancestor would have taken if alive.' Surely this is not to construe W. R. Coon's will, but to make a will for him, such as one may conjecture it would have been advisable for him to have made."

What, then, is the effect of these words, " or their heirs," in this connection ? Literally and grammatically, they have no effect whatever, because grammatically the word " their " can refer only to " those living "; and as the living can have no heirs, these words must be held to be merely words of limitation, serving to show that the estate given the survivors is absolute and indefeasible. In this way, and only in this way, is it possible to give an effect at once natural and entirely consistent with legal rules to every word of the will, without violence, and without engrafting thereon limitations which are

not only not expressed, but which in all probability never entered into the mind of the testator.

The effect given by the opinion and decree of the court below to the testator's will, so far from being that which, from the language of the will itself, we must conclude to have been his intention, and from what he would naturally be presumed to intend, goes very far to defeat his plainly-expressed intention.

It would seem impossible, in view of the general, all-pervading expressed intention, to escape the conclusion that W. R. Coon meant to give to his brothers, John, Patterson, and Robert, a real, substantial, and beneficial interest, liable to fail only on one contingency and condition—namely, dying without issue before the termination of the life estate, in which event the whole was to enure to the survivors. But by the ruling of the court below these brothers, the specific objects of his love and bounty, and who, by the clearest and most unambiguous language, were given the remainder in fee in the land, would get nothing at all, unless they should survive a healthy young woman, whose expectation of life, by reason of sex and age, was better than theirs. This is well illustrated in the fact that we here have the *children* of those brothers, most of whom were born after the testator's death, strenuously insisting that the testator really did not intend to give his brothers anything of much practical value, but a mere contingency dependent on a survivorship, the chances of which were and are greatly against them. That the testator intended anything of the kind is as improbable as it is unnatural. He certainly gave no expression, either expressly or by implication, to any such purpose.

That the gift to John, Patterson, and Robert, in the first instance, is a remainder in fee after the life estate of the testator's wife, is a proposition too clear to admit of argument. In fact the court below admits this much. Then the estate

devised is a *vested* remainder, because limited to a certain person, on an event certain to happen, and possessing *the capacity to take effect in possession whenever the possession should become vacant* by the limitation of the life estate. Fearne on Rem. 216 ; 1 Lomax Dig. 409–420.

The language of the will is : " And after her death I will and bequeath my land to my brothers, John Coon, Patterson Coon, and Robert Coon, to be equally divided between those brothers, or their heirs, if living." It is conceded by all parties that the phrase, " or their heirs, if living," is, and was intended to be, a phrase of survivorship. The question made by counsel and sustained by the court below is as to the *time* in respect to which the *survivorship* is to be determined. The court below held that this survivorship relates to the death of the life tenant; and in doing so held this language : " After providing for his wife, the testator desired to provide for his brothers, or, if any of them should *fail to survive his wife,* for the issue of those who were dead." It is inconceivable how any such conclusion was arrived at. There certainly is not a word in the will upon which to predicate any such idea. There is nothing even tending to support any such special intent, and it is plainly opposed to the clearly-expressed general intent of the testator that his brothers should have the remainder in fee after the expiration of the life estate.

But the court below construes the words of survivorship as relating to the time of the expiration of the life estate. This is clearly an erroneous idea, and one entirely unsupported by a single word or phrase in the will. No rule of law is more firmly established by the uniform course of decision in this court than that which, in the absence of clear and unequivocal expressions of a different purpose, (and such expressions are conspicuously absent from the will here under consideration,) refers such words of survivorship to the death of the testator, and not to that of the life tenant. It was so held in

*Hansford* v. *Elliott,* 9 Leigh 79, the first case in which the question arose in this court, and was decided in 1837, four judges concurring and one dissenting. In that case Judge Parker, speaking for himself and Judges Brooke, Cabell, and Brockenbrough, said this was " the safest and soundest construction—that most consonant with the testator's intention, and best supported by the authorities."

The question was next presented in 1854, when the *personnel* of this court had wholly changed, the judges being Allen, Daniel, Moncure, Lee, and Samuels, and in *Martin* v. *Kirby,* 11 Gratt. 67, four judges again agreed in following *Hansford* v. *Elliott.* In that case (*Martin* v. *Kirby*) Judge Lee in his opinion shows how, in England, the rule had shifted, the tendency of the later cases in that country being to refer words of survivorship to the death of the life tenant, rather than to that of the testator.

The question again arose in *Stone* v. *Nicholson,* 27 Gratt. 1, in 1876, when this court consisted of Judges Moncure, Christian, Anderson, Staples, and Bouldin, the latter being ill and absent. The cases of *Hansford* v. *Elliott* and *Martin* v. *Kirby* were unanimously approved and followed ; and it was then said : " Words of survivorship in such cases are always to be referred to the period of the testator's death, if no special intent appears to the contrary."

Again, in 1879, the question was before this court, constituted as last above stated, and with Judge Burks added in place of Judge Bouldin, who had died, when, in *Brown* v. *Brown's Adm'r,* 31 Gratt., the rule laid down in the above-named cases was approved, reaffirmed, and applied to a peculiar form of expression in a marriage contract, and in a will, " with benefit of survivorship." But the opinion was unanimous, although the peculiar language strongly tended to support the contention that the words of survivorship referred to the death of the life tenant, and not to that of the testator.

This court, as at present constituted, has repeatedly recognized the same rule. In *Randolph* v. *Wright,* 81 Va. 606, (1886,) Judge Lacy, recognizing the principle, shows that the rule did not apply, because the language used, " should either son die without a will or lawful issue, the surviving son must heir all the property," is absurd and without meaning if applied to the death of the testatrix, and *ex necessitate* applied to the longest liver of the two sons.

In *Stokes* v. *Van Wyck*, 83 Va. 733, (1887,) this court unanimously recognized and applied the rule, citing the previous cases.

In *Stone* v. *Lewis*, 84 Va. 474, (1888,) Lewis, P., delivering the unanimous opinion of the court, recognizes the rule as established, and cites the cases above referred to as controlling the case he was considering. He says: "And it is undoubtedly the established doctrine of this court, whatever conflict there may be among the English cases, upon many of which the learned counsel for the appellants relied in the argument at the bar."

The limitation in that case was closely analogous to that in the present case. The testator devised his plantation to his wife for life, and after her death to be sold and the proceeds divided equally between his "surviving brothers and sisters, and the children of such as may be dead." If, as insisted upon by counsel for the appellees, and held by the court below, the words in W. R. Coon's will, "or their heirs, if living," are equivalent to "or the issue of any who may have died," the two cases would be precisely alike, and the present case would be expressly ruled by that of *Stone* v. *Lewis.*

And in *Jameson* v. *Jameson*, 86 Va. 56, (1889,) Judge Lacy, again delivering the opinion of the court, and referring to most of this line of decisions, says : "Words of survivorship, in cases where these come in question, are to be referred to the

period of the death of the testator, unless some contrary intent appears."

Such, then, has been the settled rule of this court for more than fifty years, and, as such, has become a canon of property in this state; and to impair it now, or fritter it away, would lead to most serious consequences, tending to disturb titles throughout the commonwealth. It is, therefore, quite plain and certain that, in the first instance, the devise to the three brothers, John, Patterson, and Robert, or their heirs, if living, whatever signification may be assigned to the words " or their heirs, if living," had reference to the question, *who should take in remainder* after the expiration of the life estate, to be determined, as it in fact was determined, *at and by the testator's death,* at which time all three of the brothers were living, as they are still living; and at the testator's death all three took the remainder in fee jointly, or, in other words, they then took a vested interest in remainder in fee; and the estate having thus vested in interest, so as to take effect in possession at the death of the life tenant, the added words, " or their heirs, if living," cannot cut down or in any way diminish the estate thus given and vested, the rule being " that, where there is a clear gift in a will, it cannot afterwards be cut down except by something which with reasonable certainty indicates the intention of the testator to cut it down. It need not, as is sometimes stated, be equally clear with the gift. ' You are not to institute a comparison between the two clauses as to lucidity. But the clearly-expressed gift naturally requires something unequivocal to show that it does not mean what it says.' " 1st Jarman on Wills, side p. 479.

It is vain and idle to contend that the words, " or their heirs, if living," added to the clearly-expressed gift to the three brothers, clearly and unequivocally signify an intention on the part of the testator to cut down the estate previously given in clear and express terms. Those words, therefore, need give

us no further concern, relating as they do to the question who should take *at the testator's death*, and, that question having been determined, it is no longer open to contingencies, or the subject of construction. From these considerations it follows, further, that the view of the court below, to the effect that this phrase indicates an intention on the part of the testator to limit the estates of these brothers by the need that they shall survive the life tenant, falls harmless to the ground.

It is clear and plain that the testator intended what he said, and what his will unequivocally expresses, to give to his childless wife an estate for her life, and a remainder in fee to the three brothers, John, Patterson, and Robert, whom, next after her, he names as the objects of his love and bounty. He thus, by the language of his will, gives to them the beneficial estate—the remainder in fee—if they be living when his will takes effect—to-wit, at his death. He may have conceived the idea that if, at his death, and the taking effect of his will, any of them should have died before him, leaving issue, such issue should succeed to the interest of the deceased ancestor; but, however intelligible and reasonable such a scheme may have been, yet, in the absence of any such provision, the statute, § 2523 of the Code, would accomplish the object; so that it is difficult, if not impossible, to work out any special intent from the language used, without violating the rule that, to ascertain the intention, we must look, not to what he meant to express, but to what the words he used do express. *Stokes* v. *Van Wyck, supra,* and *Burke* v. *Lee,* 76 Va. 380. This rule the court below entirely disregarded, by substituting, for what the testator actually did say, a presumed intention, probably gathered from an erroneous conception of what would, in its estimation, have been an intelligible and consistent scheme, if he had aptly expressed it.

Nowhere in the testator's will is there to be found a single word or phrase, or set of words or phrases, which in the least

*tend* to show a purpose on the testator's part to deprive his brothers of his bounty after bestowing it upon them, merely upon the condition of their failing to outlive the life tenant. Nor is there any reason whatever disclosed why he should cut down the estate of the principal objects of his bounty to a bare possibility, dependent upon their surviving the life tenant. The testator has not said that such was his purpose, nor can it be fairly inferred from anything he does say; and this court will not undertake to say it for him.

But, as already stated, there was one contingency which did occur to the testator's mind, as to which he did attach a condition to the estate in remainder given to his three brothers, by which a defeasance might result; and he expressed it in the following clear and unmistakable terms: "If either of them would [should] *die without heirs,* before the division of the estate, the property to go to those living, or their heirs."

Evidently the testator had in contemplation the contingency of one or more of these brothers dying during the continuance of the life estate, and in the event of the death of one of them before the widow, leaving children or descendants, he had no reason or wish to interfere in such case, for by inheritance the children would succeed their parents respectively. Whatever may have been his thoughts and reflections, he did not see fit to say one word with reference to the case of one brother dying, leaving issue surviving him, during the life estate. But for the case of one dying during the life estate, leaving no issue, he *did* see fit to provide, and he did it by the language above quoted.

Assuming that the phrase "before the division of the estate" may be taken as equivalent to "before the termination of the life estate," the only contingency the testator provided for, he simply directs that the interest of the one so dying without issue shall be merged into the property, and *the property* go to *those living,* or their heirs. If the clause

had stopped with the words "those living," the meaning would have been too plain to admit of any question. In the event named, should it ever happen that one should die without issue, the others then living would have the whole; if but one were then living, he would have, at the least, his own share, and also that of the one so dying without issue. *Ita scripta est.* The added words, "or their heirs," wherever they occur in the will, produce the only difficulty. The rule that some effect is to be given to all the words employed, if it can be done without destroying the sense, makes it necessary to determine what, if anything, these words mean in the connection in which they are used. Obviously the pronoun "their" relates to "those living." But the living cannot have heirs; so that, when taken grammatically, the phrase is repugnant and insensible. But suppose, according to the view of the court below, the word "heirs" be read as equivalent to "issue," because, in the second place where it occurs, it has that signification. Then it would run thus: "The property will go to those living, or their issue"; which is not less insensible than the word "heirs" was; for it is not conceivable that the testator intended the *issue* of the living brothers to take along with their living fathers, or by substitution for them. It follows, therefore, that the words used, without some modification, are not capable of being so construed as to convey a sensible meaning. Hence the alternative is presented either to make such modification as will do the least violence to the rest of the language, or a modification which imputes to the testator a scheme foreign to the language employed by him in the context, and a modification he never expressed.

Counsel for the appellees and the court below insist upon a modification which introduces new words of limitation. They, in fact, construct a limitation out and out, by making the clause read as if it were written thus: "If either of them

would die without issue, before the division of the estate, the property shall go to those living; or, if any have died leaving issue, to such issue, who shall take the share of their deceased ancestor"; thus introducing upon the merest conjecture the whole of this limitation to the issue of a pre-deceased brother; which, so far from construing W. R. Coon's will, is but making a will for him. We know of no rule of law or canon of construction that will justify such a course.

On the other hand, we find a ready solution of the difficulty by simply reading "and" for "or," and giving to the words "their heirs" their usual and legal signification, denoting succession (*Wallace* v. *Minor*, 86 Va. 556,) namely, that in this place, at least, the testator used the word as a word of limitation, and not one of purchase; and that the phrase was meant to show the quantity of estate the surviving brothers should take, and not to designate a new class of beneficiaries, for which, as here used, it is entirely inadequate; or the same object may be attained, and with perhaps a greater degree of accuracy, by simply rejecting the phrase " or their heirs," wherever it occurs in the will.

A very instructive case, in its application to the case in hand, is that of *Chew* v. *Kellar*, 100 Mo. 362, decided in March, 1890; *s. c.*, 13 S. W. Rep., 395.

The testator devised all his real estate, worth $600,000, to his wife for life, and half of it in absolute fee simple. The will then divided the other half in remainder, after the widow's life estate, into ninths, which he gave to certain devisees, " to have and to hold in said parts unto them, as tenants in common, to them and their heirs forever; but the said devisees are not to take possession of their said parts until the death of [the wife], and upon her death they shall take said parts so devised, * * * and in case *either of them shall die before the wife, then the heirs of such person so dying shall* take his or her portion so devised." One of these devisees, to whom

two ninths of the moiety so limited was given, aliened his interest and died before the widow. The suit was brought by his children, claiming that they were substituted for their father by the provision printed in italics. *Held:* That the devisees took a remainder in fee, free from any condition ; and, in the event of the death of one of them before the wife, his heirs took his portion by descent, and not as purchasers.

The difference between that case and the one at bar is, chiefly, that what is sought here to be worked out by construction in favor of the heirs as purchasers, in that case was formally expressed—namely, that, if either of the devisees in remainder should die during the life estate, the heirs of the person so dying should take his or her portion. But the court, in an elaborate opinion, decided that the will shows that the estate given to the remaindermen was a fee in the first instance, and the clause relied on was insufficient to cut down that fee to a defeasible estate in favor of the issue of one dying during the life estate. *A fortiori,* in the present case, the estate intended to be given being a fee—the most beneficial to the testator's brothers—cannot be cut down by resort to doubtful conjectures as to what he might have desired to say, different from what he did say, if certain possible contingencies had been pointed out to him.

While it is by no means essential to the appellants' case to maintain that the word "heirs," in the first and second places where it appears, is used as a word of limitation, or in its technical sense, yet, so far as its use in the third and last place is concerned, it is obvious that when the word "issue" is substituted for it, the language is equally wanting in sense and intelligibility, and therefore there is no reason why it should have that rather than its true meaning assigned to it.

Doubtless the truth is, that the will having been written *inops consillii,* no definite and precise sense was intended to be conveyed by its use, at least in this third and last place ;

but, in all probability, there was a vague notion in the mind of the scrivener and of the testator that the word " heirs " was used in legal documents where the entire interest in a heritable estate is given, and hence its employment is to indicate that the estate so given was an estate of inheritance. And it seems too plain to need elaborate argument to sustain it, that, when a layman uses technical words with the looseness and obvious ignorance of their import so clearly indicated in this case, there is but little, if any, force in the presumption, on which the court below largely rests its opinion, that the same phrase is always to be taken to have been used in the same sense.

The ruling of the court below violates yet other important rules of construction. The law favors the vesting of estates at the earliest possible moment consistent with the will and sound public policy; and while, when a testator has shown clearly and unmistakably that it is his purpose to postpone the vesting of the entire interest to a future day, within the limit of the rule against perpetuities, such postponement is not a result which the courts will be astute to find pretexts for implying, it has long been a rule of policy to favor the construction which enables an owner to sell and convey the fee, rather than to tie up estates in a manner which withdraws them from the active convertible wealth of society, and keeps them out of the track of improvement.

No more striking instance of the deleterious effects of the mischief against which this rule is directed can be found than this case would present if the contention of the appellees should prevail. Here a tract of land, lying within the limits of the most rapidly-growing city in the state, would be tied up for an indefinite time, because no one would be able to make a valid title until after the death of Mrs. Gish. Those purchasers of the thirty acres which, on the faith of the rules above laid down, have been sold out in lots, many of them

more or less improved, will find themselves in possession of properties they can neither sell nor safely improve. A deep notch in the territory over which the city of Roanoke would naturally be developed would be practically cut out and lie at waste, instead of subserving the valuable purposes of vendible and improvable property. Persons who have already invested in portions of it would not only be restrained from improving, but would look anxiously forward to the time when, on the falling-in of the life estate, they might become the victims of ruinous suits at the hands of this swarm of so-called " *contingent remaindermen.*" No such ruinous consequences should be tolerated, except in obedience to some inflexible rule of law, and there is none such to stay the corrective hand of this court. The rules above laid down are founded in justice and sound public policy, and should not be frittered away by the specious application of arbitrary rules which impute to a testator a purpose he never entertained, and to which he has given no expression.

In *Martin* v. *Kirby, supra,* Judge Lee said : " What may be the true intention of the testator in any case is best adduced from the terms and provisions of the will when viewed in the light of the surrounding circumstances. which attended the execution. To seek to determine it by applying arbitrary rules and technical principles, with which testators, and those who write their wills, are, in a very large majority of cases, utterly unacquainted, would be most unprofitable and hazardous."

But the court below, to sustain the very remarkable conclusion arrived at by it, cites and relies upon two English cases—*Turner* v. *Moore,* 6 Vesey 557, and *Montague* v. *Nucella,* 1 Russell 165. In the case of *Turner* v. *Moore* the words of the will are : " I bequeath £15,000 to my nephew, Robert Dalrymple, or, in case of his death, to his lawful issue," &c. The master of the rolls held : First. It is quite clear here

the intention was that, if Robert Dalrymple should be living at the testator's death, he should take absolutely, and his childred should take nothing.   And in the case of *Montague* v. *Nucella* the testator gave a legacy to each of five nephews and nieces, *or* to their respective child or children ; and, should any die without child, such share to revert to the residuary legatee.   *Held :* Each of the nephews and nieces who survived the testator took his or her legacy absolutely ; the master of the rolls saying : " The true construction is to vest the legacies absolutely in the nephews and nieces who survived the testator, and that the child or children of nephews or nieces took only as substitutes for their parent or parents who may have died in the testator's lifetime."

These cases, so far from sustaining the substitutional theory of the court below, are plainly and directly opposed to it. Both of the cases are on all fours with the case of *Martin* v. *Kirby, supra,* and similar cases cited above, and a long line of cases that might be referred to.

The court below refers to the case of *Dickinson* v. *Hoomes,* 1 Gratt. 308, and says : " That case turned, in the main, upon the signification to be given to the word ' representatives,' which was used there instead of the word ' heirs,' which is used here ; but the word ' or,' which was used there, as it is here, was given the signification which, it seems to me, it is bound to have, as being introductory of a substituted gift." This is clearly a misapprehension on the part of the court below.   From a mere casual reading of the opinion of Judge Baldwin in that case, it will clearly appear that the case turned, not on the word " representatives," nor upon the word " or," but upon the words " according to the principles of the law of descents," which followed the word " representatives " in the will.   It will also appear that Judge Baldwin did not once allude to the word " or " as having the signification attributed to it by the court below.   And so, too, the decision

in *Brent* v. *Washington*, 18 Gratt. 526, which is the key to *Dickinson* v. *Hoomes*, turned upon the words " according to the statute of distributions," which follow the word " representatives " in that case, and the word " and " was used there instead of the word " or " as here.

In delivering the opinion of the court, Judge Joynes says : " In all these cases the substitutional gifts were introduced by the word ' or ' ; but the same construction will be made, though the word ' and ' is used instead of ' or,' *when the intention* requires it. But in neither case is there any intimation that such intention was indicated by the use of the disjunctive participle ' or.' "

Obviously, in the light of these authorities, the substitutional theory must fall harmless to the ground. Certain it is such construction was not given by this court to the word " or " in the phrase, " my surviving children, *or their heirs*," in the case of *Martin* v. *Kirby, supra,* nor in the phrase, " my surviving children, *or their lawful heirs*," in the case of *Brooke* v. *Croxton*, 2 Gratt. 507, nor in like phrases in any of the cases cited above, and numerous others that might be referred to. On the contrary, in each and all of them, as the devisees, or legatees, of the absolute estate in remainder were living at the testator's death, the devises were held to have vested at that period, and the words " or their heirs " were held to have performed their functions, and were disregarded as superfluous, insensible, and repugnant, or the word " or " was construed " and." What, we ask, becomes, in all of these cases, of the " peculiar signification of the word ' or,' as introductory of a substituted gift " ? The answer is, that, standing in the way of the true interpretation and meaning of the whole context of the will, it was so construed as to be consistent with reason and common sense, and to effectuate the real intention of the testator as gathered from the whole instrument, and not according to injurious speculations, based on inconsistent

and repugnant expressions, as to what may have been intended, but is not expressed in apt and adequate terms.

All the cases cited above, and many others that might be referred to, sustain the doctrine that words of survivorship refer to the death of the testator, unless there be something in the context of the will to demonstrate an intention to make them refer to the death of the life tenant. So far from there being in the will of W. R. Coon anything to demonstrate an intention to refer such words to the death of the life tenant, there is nothing, in any intelligible sense, that tends in that direction. On the contrary, the general intention, pervading the whole context, demands that such words be referred to the death of the testator, and not to that of the life tenant.

The word "heirs" occurs three times in the will of W. R. Coon—first in the phrase "or their heirs, if living"; second, standing alone in the last clause; and third, in the same clause, in the phrase "or their heirs." On behalf of the appellees, the children of the three brothers, John, Patterson, and Robert Coon, the words "if living," following the words "or their heirs," are relied upon as fixing the time of vesting the estate at the death of the life tenant. The contention is illogical, if not absurd. The testator does not say "if living at the death of the life tenant," nor does he say anything even intimating any intention of the kind. After giving the life estate to his wife, the testator says: "And after her death I will and bequeath my land to my brothers, John Coon, Patterson Coon, and Robert Coon, to be equally divided between those brothers," &c. If the testator had stopped here, there could have been no room even for the ingenious speculations and surmises of counsel, which constitute the soul and body of this controversy; but the testator added the words "or their heirs, if living," and upon the words of survivorship, "if living," the counsel for the appellees mainly found their contention that the testator intended the estate to vest at the

death of the life tenant, and not at the death of the testator.
Why refer these words of survivorship to the death of the
life tenant, rather than to that of the testator, when there are
no words used in the will adequate to the purpose of post-
poning the vesting of the estate to the period of the death of
the life tenant? It is absolutely incredible that the testator,
after saying, " and after her death I will and bequeath my
land to my brothers, John Coon, Patterson Coon, and Robert
Coon, to be equally divided between those brothers," intended
by the added words, " or their heirs, if living," to cut down,
and, in effect, destroy the remainder in fee given to his three
brothers in the most explicit and unequivocal terms. To
impute to the testator any such purpose is simply idle,
especially when he does not use one word in his will which,
fairly construed, indicates any such purpose.

And in the third and last clause of the will, which reads,
" if either of them would die without heirs, before the division
of the estate, the property to go to those living, or their heirs,"
the word " their " refers, not only grammatically, but accord-
ing to the sense of the great mass of English-speaking people,
to the words " those living "—that is, the brothers living.
And it is obvious that, as living persons cannot, in a legal
sense of the word, be said to have heirs, the phrase, " or their
heirs," following the words " to those living," is insensible
and repugnant; and this phrase, which occurs here as well as
in the preceding clause, must either be rejected in both
instances as insensible and repugnant, or the word " or "
must be read " and," so as to make the phrase, in the first
instance, following the words " to be equally divided between
those brothers," and, in the second instance, where it follows
the words " to those living," sensible and consistent. It often
becomes necessary to make such modifications in one or both
of the ways suggested. See *East* v. *Garrett*, 84 Va. 523.

It is plain that a gift indifferently to one or the other of

two persons, or two classes of persons, is a gift to neither; hence the unintelligibility and repugnance of the phrase " or their heirs," whenever it occurs in the will of the testator, W. R. Coon. The phrase, if literally carried out, would work an intestacy as to the remainder in fee in the testator's land after the expiration of the life estate—a thing always to be avoided if possible.

The modification of the will in the present case that seems most consonant to the plainly-expressed general intention of the testator is to reject as insensible and repugnant, wherever it occurs in the instrument, the phrase " or their heirs." So modified, the body of the instrument will be rendered sensible and consistent in all its parts, and will read as follows :

" First—after paying all my just debts, I will and bequeath to my wife, Nancy E., all of my personal and real estate, so long as she may live; and after her death I will and bequeath my land to my brothers, John Coon, Patterson Coon, and Robert Coon, to be equally divided between those brothers, if living; if either of them would die without heirs, before the division of the estate, the property to go to those living."

This effectuates the clearly-expressed general intention of the testator, which was to give to his three brothers, if living at his death, a fee simple, beneficial, alienable interest, defeasible *only* in the event of dying *without* issue during the lifetime of the widow, in which event the property was to pass to the survivors. The brothers all survived the testator, and all of them are now living, and, having survived him, they took, at his death, a vested estate in remainder in fee, which will take effect in possession at the expiration of the life estate. Having thus acquired a beneficial, alienable estate, they and those claiming under and through them took the absolute estate in fee; and, by virtue of the testator's will and the several conveyances in the bill mentioned, the appellants, Gish and wife, became vested with the absolute estate in fee in the

land devised by said testator, and for the part thereof sold by them to the purchasers, W. P. Moomaw and others, as set forth in the agreement of sale, a copy of which is exhibited with the bill, they have a good and absolute title, and their deed for same tendered to said purchasers, as set forth in the bill, or a like deed, when duly acknowledged and delivered, will vest in said purchasers a good and absolute title to the land sold them ; and that therefore the appellants, Gish and wife, are entitled to have specific execution of the contract of sale aforesaid.

For these reasons the decree of the court below must be reversed and annulled, and a decree entered here settling the principles of the cause in accordance with the views herein expressed, and remanding the cause to the hustings court of Roanoke city for further proceedings to be had therein, in order to a final decree in accordance with the views expressed in this opinion.

The decree was as follows :

This cause, which is pending in this court at its place of session at Richmond, having been there fully heard but not determined, this day came here again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the three brothers of the testator, W. R. Coon, deceased—to-wit, John, Patterson, and Robert Coon—took vested interests in the land in the bill and proceedings mentioned, at the testator's death ; and, therefore, that the appellants, Gish and wife, by virtue of the several deeds of conveyance in the bill and proceedings mentioned, took a good and absolute title to the said land devised as aforesaid ; and that the deed tendered by the said appellants to the said

Decree.

purchasers, in the bill mentioned, or a like deed, when duly executed and delivered, will be sufficient to vest in the said purchasers a good and absolute title to the land mentioned in the contract of sale, a copy of which is exhibited with the bill. And this court is, therefore, further of opinion that the said appellants are entitled to specific execution of the said contract.

It is therefore considered that the said decree be reversed and annulled, and that the appellees do pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And this cause is remanded to the said hustings court of Roanoke city for further proceedings to be had therein, in order to a final decree specifically executing said contract of sale in conformity with the views in writing aforesaid. And the clerk of this court will enter this order in his order-book here, and certify the same to the clerk of this court at Richmond, who will enter and certify the same in conformity with the statute in such case made and provided.

DECREE REVERSED.